1
2
3
4
5
6
7
8                     IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10
11    DWAYNE EICHLER,                           No. CIV S-09-1032-MCE-CMK-P

12                 Plaintiff,

13         vs.                                  ORDER

14    J. TILTON, et al.,

15                 Defendants.

16    _____/

17              Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant

18    to 42 U.S.C. § 1983.  Pending before the court is plaintiff's complaint (Doc. 1).

19              The court is required to screen complaints brought by prisoners seeking relief

20    against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C.

21    § 1915A(a).  The court must dismiss a complaint or portion thereof if it: (1) is frivolous or

22    malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief

23    from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1), (2).  Moreover,

24    the Federal Rules of Civil Procedure require that complaints contain a "short and plain statement

25    of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This means

26    that claims must be stated simply, concisely, and directly.  See McHenry v. Renne, 84 F.3d 1172,

                                            1

1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the

complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it

rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because a plaintiff must allege

with at least some degree of particularity overt acts by specific defendants which support the

claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is

impossible for the court to conduct the screening required by law when the allegations are vague

and conclusory.


## I.  PLAINTIFF'S ALLEGATIONS

Plaintiff makes several vague and general allegations about mistreatment and the

hardships of prison life.  His claims include not receiving adequate medical treatment, not being

allowed to exercise his religious rights, being denied healthy food choices, being denied an

adequate inmate appeals process, being subjected to overcrowded conditions, being denied

parole, high prices for canteen items, limited visitors, and being denied his personal property.

His complaint suffers from numerous deficiencies, as discussed below.


## II.  DISCUSSION

Rule 8

First and foremost, as stated above, Rule 8 requires a short and plain statement of

the claim being raised.  Plaintiff's complaint does not meet that standard.  Instead, Plaintiff's

complaint contains numerous vague and rambling allegations about the hardships he is faced

with in prison.  His rambling complaint is over 60 pages long.  He fails to state his claims clearly

and concisely.  His complaint will therefore be dismissed on this basis, but he will be granted

leave to file an amended complaint.

/ / /

/ / /

The federal rules contemplate brevity.  See Galbraith v. Co. of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)"); Fed. R. Civ. P. 84; cf. Rule 9(b) (setting forth rare exceptions to simplified pleading).  Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly.  See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8.  Thus, he must not include in his pleading all preambles, introductions, argument, speeches, explanations, stories, griping, vouching, evidence, attempts to negate possible defenses, summaries, and the like.  See McHenry, 84 F.3d at 1177-78 (affirming dismissal of § 1983 complaint for violation of Rule 8 after warning); see also Crawford-El v. Britton, 523 U.S. 574, 597 (1998) (reiterating that "firm application of the Federal Rules of Civil Procedure is fully warranted" in prisoner cases).  The court (and defendant) should be able to read and understand plaintiff's pleading within minutes.  See McHenry, 84 F.3d at 1179-80.  A long, rambling pleading including many defendants with unexplained, tenuous or implausible connection to the alleged constitutional injury, or joining a series of unrelated claims against many defendants, very likely will result in delaying the review required by 28 U.S.C. § 1915 and an order dismissing plaintiff's action pursuant to Fed. R. Civ. P. 41 for violation of these instructions.

While Plaintiff's claims are vague, it appears he is attempting to raise some claims which are non-cognizable, and others which simply suffer from lack of clarity and specificity.

Medical Treatment

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment "embodies broad and idealistic concepts of

1    dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102

2    (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v.

3    Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

4    "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy,

5    801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only

6    when two requirements are met: (1) objectively, the official's act or omission must be so serious

7    such that it results in the denial of the minimal civilized measure of life's necessities; and (2)

8    subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

9    inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

10   official must have a "sufficiently culpable mind."  See id.

11            Deliberate indifference to a prisoner's serious illness or injury, or risks of serious

12   injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at

13   105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental

14   health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is

15   sufficiently serious if the failure to treat a prisoner's condition could result in further significant

16   injury or the "unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d 1050,

17   1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).

18   Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition

19   is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily

20   activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See

21   Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

22            The requirement of deliberate indifference is less stringent in medical needs cases

23   than in other Eighth Amendment contexts because the responsibility to provide inmates with

24   medical care does not generally conflict with competing penological concerns.  See McGuckin,

25   974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to

26   decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.

1    1989).  The complete denial of medical attention may constitute deliberate indifference.  See

2    Toussaint, 801 F.2d at 1111.  Delay in providing medical treatment, or interference with medical

3    treatment, may also constitute deliberate indifference.  See Lopez, 203 F.3d at 1131.  Where

4    delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury.

5    See McGuckin, 974 F.2d at 1060.

6            Negligence in diagnosing or treating a medical condition does not, however, give

7    rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a

8    difference of opinion between the prisoner and medical providers concerning the appropriate

9    course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh,

10   90 F.3d 330, 332 (9th Cir. 1996).

11           To the extent Plaintiff is claiming denial of medical treatment, Plaintiff's claims

12   are mostly vague and conclusory.  While he claims he was denied medication and denied

13   treatment as well as follow up visits, he fails to state who denied him medication, what

14   medication he was denied, and who denied him treatment.[1]  However, Plaintiff will be provided

15   an opportunity to try to amend these claims.

16

17           Religious Practice

18           The United States Supreme Court has held that prisoners retain their First

19   Amendment rights, including the right to free exercise of religion.  See O'Lone v. Estate of

20   Shabazz, 482 U.S. 342, 348 (1987); see also Pell v. Procunier, 417 U.S. 817, 822 (1974).  Thus,

21   for example, prisoners have a right to be provided with food sufficient to sustain them in good

22   health and which satisfies the dietary laws of their religion.  See McElyea v. Babbit, 833 F.2d

23

24   _____
     [1]     The undersigned notes two additional issues with Plaintiff's denial of medical
     treatment claims.  First, Plaintiff has another action pending in this court regarding medical

25   and/or dental treatment.  To the extent Plaintiff is attempting to restate those claims, he will not
     be permitted to proceed on duplicative claims.  In addition, he is complaining about treatment, or
     lack thereof, from ten years ago.  Some of those claims will likely be barred by the statute of

26   limitations.

5

1  196, 198 (9th Cir. 1987).  In addition, prison officials are required to provide prisoners facilities

2  where they can worship and access to clergy or spiritual leaders.  See Glittlemacker v. Prasse,

3  428 F.2d 1, 4 (3rd Cir. 1970).  Officials are not, however, required to supply clergy at state

4  expense.  See id.  Inmates also must be given a "reasonable opportunity" to pursue their faith

5  comparable to that afforded fellow prisoners who adhere to conventional religious precepts.  See

6  Cruz v. Beto, 405 U.S. 319, 322 (1972).

7  　　　　However, the court has also recognized that limitations on a prisoner's free

8  exercise rights arise from both the fact of incarceration and valid penological objectives.  See

9  McElyea, 833 F.2d at 197.  For instance, under the First Amendment, the penological interest in

10  a simplified food service has been held sufficient to allow a prison to provide orthodox Jewish

11  inmates with a pork-free diet instead of a completely kosher diet.  See Ward v. Walsh, 1 F.3d

12  873, 877-79 (9th Cir. 1993).  Similarly, prison officials have a legitimate penological interest in

13  getting inmates to their work and educational assignments.  See Mayweathers v. Newland, 258

14  F.3d 930, 38 (9th Cir. 2001) (analyzing Muslim inmates' First Amendment challenge to prison

15  work rule).

16  　　　　In addition, Congress enacted the Religious Land Use and Institutionalized

17  Persons Act ("RLUIPA") in 2000.  See Guru Nanak Sikh Soc. of Yuba City v. County of Sutter,

18  456 F.3d 978, 985 (9th Cir. 2006) (citing City of Boerne v. P.F. Flores, 521 U.S. 507 (1997)) .

19  Under RLUIPA, prison officials are prohibited from imposing "substantial burdens" on religious

20  exercise unless there exists a compelling governmental interest and the burden is the least

21  restrictive means of satisfying that interest.  See id. at 986.  RLUIPA has been upheld by the

22  Supreme Court, which held that RLUIPA's "institutionalized-persons provision was compatible

23  with the Court's Establishment Clause jurisprudence and concluded that RLUIPA 'alleviates

24  exceptional government-created burdens on private religious exercise.'"  Warsoldier v.

25  Woodford, 418 F.3d 989, 994 (9th Cir. 2005) (quoting Cutter v. Wilkinson, 544 U.S. 709, 720

26  (2005)).

1          It is not clear whether a prisoner must specifically raise RLUIPA in order to have

2    his claim analyzed under the statute's heightened standard.  Compare Alvarez v. Hill, 518 F.3d

3    1152, 1157 (9th Cir. 2008) ("factual allegations establishing a 'plausible' entitlement to relief

4    under RLUIPA, . . . satisfied the minimal notice pleading requirements of Rule 8 of the Federal

5    Rules of Civil Procedure."), with Henderson v. Terhune, 379 F.3d 709, 715 n.1 (9th Cir. 2004)

6    (declining to express any opinion about whether plaintiff could prevail under RLUIPA because

7    plaintiff brought his claim under the First Amendment only).  Therefore, it is possible for a

8    prisoner's complaint to raise both a First Amendment claim and a RLUIPA claim based on the

9    same factual allegations.  In other words, even if the plaintiff does not specifically invoke the

10   heightened protections of RLUIPA, he may nonetheless be entitled to them.  Under Henderson,

11   however, the plaintiff's claim may be limited to the less stringent Turner "reasonableness test" if

12   the plaintiff specifically brings the claim under the First Amendment only.

13          Under both the First Amendment and RLUIPA, the prisoner bears the initial

14   burden of establishing that the defendants substantially burdened the practice of his religion by

15   preventing him from engaging in conduct mandated by his faith.  See Freeman v. Arpaio, 125

16   F.3d 732, 736 (9th Cir. 1997) (analyzing claim under First Amendment); see also Warsoldier,

17   418 F.3d at 994-95 (analyzing claim under RLUIPA).  While RLUIPA does not define what

18   constitutes a "substantial burden," pre-RLUIPA cases are instructive.  See id. at 995 (discussing

19   cases defining "substantial burden" in the First Amendment context).  To show a substantial

20   burden on the practice of religion, the prisoner must demonstrate that prison officials' conduct

21   "burdens the adherent's practice of his or her religion by pressuring him or her to commit an act

22   forbidden by the religion or by preventing him or her from engaging in conduct or having a

23   religious experience which the faith mandates."  Graham v. Commissioner, 822 F.2d 844, 850-51

24   (9th Cir. 1987).  The burden must be more than a mere inconvenience.  See id. at 851.

25   / / /

26   / / /

1    Plaintiff's claims that his religious rights are being denied is unclear.  It appears

2  that he is claiming his rights are being violated by prison officials not allowing him to practice

3  yoga.  In order for Plaintiff to show his rights have been violated, at a minimum, he will be

4  required to show that his religious beliefs are sincerely held and that they are religious in nature.

5  See Callahan v. Woods, 658 F.2d 679, 683 (9th Cir. 1981).  If Plaintiff is going to amend his

6  complaint to attempt to state a claim regarding his freedom of religion rights, he will be required

7  to clearly state what rights he believes have been violated and how the defendants are

8  substantially burdening the practice of his religion .

9

10    Property Rights

11    Where a prisoner alleges the deprivation of a liberty or property interest caused by

12  the unauthorized action of a prison official, there is no claim cognizable under 42 U.S.C. § 1983

13  if the state provides an adequate post-deprivation remedy.  See Zinermon v. Burch, 494 U.S. 113,

14  129-32 (1990); Hudson v. Palmer, 468 U.S. 517, 533 (1984).  A state's post-deprivation remedy

15  may be adequate even though it does not provide relief identical to that available under § 1983.

16  See Hudson, 468 U.S. at 531 n.11.  An available state common law tort claim procedure to

17  recover the value of property is an adequate remedy.  See Zinermon, 494 U.S. at 128-29.

18    To the extent Plaintiff is alleging he is being denied the property and other items

19  he purchases through the canteen, the state provides an adequate remedy.  It does not appear that

20  he will be able to state a claim for denial of his property, nor that these defects are curable, so

21  Plaintiff is not entitled to leave to amend this claim.

22

23    Inmate Appeals Process

24    Prisoners have no stand-alone due process rights related to the administrative

25  grievance process.  See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v.

26  Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling

1    inmates to a specific grievance process).  Because there is no right to any particular grievance

2    process, it is impossible for due process to have been violated by ignoring or failing to properly

3    process grievances.   Numerous district courts in this circuit have reached the same conclusion.

4    See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly

5    process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863

6    (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address

7    grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL

8    29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process

9    a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967

10   (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function

11   properly failed to state a claim under § 1983).  Prisoners do, however, retain a First Amendment

12   right to petition the government through the prison grievance process.  See Bradley v. Hall, 64

13   F.3d 1276, 1279 (9th Cir. 1995).  Therefore, interference with the grievance process may, in

14   certain circumstances, implicate the First Amendment.

15          To the extent Plaintiff is attempting to state a claim for an inadequate inmate

16   grievance process, he has failed to do so.  In addition, it does not appear this defect is curable, so

17   Plaintiff is not entitled to leave to amend this claim.

18

19          Visitation

20          Plaintiff also claims he is not being provided adequate time to visit with his

21   family.  It appears he is claiming he is being denied contact visitation.  To that extent, prisoners

22   have no right to contact visitation.  See Barnett v. Centoni, 31 F.3d 813, 817 (9th Cir. 1994) (per

23   curiam).  The Due Process Clause does not guarantee a right of unfettered visitation.  See

24   Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460-61 (9189).  It therefore, does not

25   appear possible that Plaintiff could state a claim for denial of visitation rights.

26   / / /

1        Food

2        Plaintiff further alleges he is being denied a healthy diet.  He is not claiming he is

3 being denied food, or that the amount of food is insufficient.  Rather, he appears to be

4 complaining about the high fat content of the food being provided.

5        Prisoners are entitled to food which is adequate to maintain their health.  <u>See</u>

6 <u>Keenan v. Hall</u>, 83 F.3d 1083, 1091 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998).

7 However, it "need not be 'tasty or aesthetically pleasing.'"  <u>Id.</u> (quoting <u>LeMaire v. Maass</u>, 12

8 F.3d 1444, 1456 (9th Cir. 1993)).  Plaintiff does not allege he has been denied adequate food,

9 only that he the food served is high in fat.  According, it does not appear possible that Plaintiff

10 can state a claim for denial of adequate food.

11

12        Parole

13        Finally, Plaintiff appears to raise an issue with being denied a parole date.  When

14 a state prisoner challenges the legality of his custody and the relief he seeks is a determination

15 that he is entitled to an earlier or immediate release, such a challenge is not cognizable under 42

16 U.S.C. § 1983 and the prisoner's sole federal remedy is a petition for a writ of habeas corpus.

17 <u>See</u> <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 500 (1973); <u>see also</u> <u>Neal v. Shimoda</u>, 131 F.3d 818, 824

18 (9th Cir. 1997); <u>Trimble v. City of Santa Rosa</u>, 49 F.3d 583, 586 (9th Cir. 1995) (per curiam).

19 Therefore, to the extent Plaintiff is alleging he should have been granted parole, and released

20 from custody, his claim is not cognizable under § 1983.  He does not raise any issue relating to

21 the parole proceedings, only that he was denied parole.  As such, it does not appear that Plaintiff

22 can state a claim under § 1983.

23

24        Pleading Standards

25        Finally, Plaintiff's complaint is inadequate in that it fails to adequately link the

26 proper defendants to his claims.  To state a claim under 42 U.S.C. § 1983, the plaintiff must

1  allege an actual connection or link between the actions of the named defendants and the alleged

2  deprivations.  See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423

3  U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within

4  the meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts, or

5  omits to perform an act which he is legally required to do that causes the deprivation of which

6  complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and

7  conclusory allegations concerning the involvement of official personnel in civil rights violations

8  are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Rather, the

9  plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged

10  constitutional deprivation.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

11         Supervisory personnel are generally not liable under § 1983 for the actions of their

12  employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no

13  respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional

14  violations of subordinates if the supervisor participated in or directed the violations.  See id.  The

15  Supreme Court has rejected the notion that a supervisory defendant can be liable based on

16  knowledge and acquiescence in a subordinate's unconstitutional conduct because government

17  officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct

18  and not the conduct of others.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  When a

19  defendant holds a supervisory position, the causal link between such defendant and the claimed

20  constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

21  (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory

22  allegations concerning the involvement of supervisory personnel in civil rights violations are not

23  sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  "[A] plaintiff must

24  plead that each Government-official defendant, through the official's own individual actions, has

25  violated the constitution."  Iqbal, 129 S. Ct. at 1948.

26  ///

1    Plaintiff has named several supervisory personnel as defendants in his complaint,

2    including the Director and Secretary of the California Department of Corrections and

3    Rehabilitation, as well as the Warden.  There is no indication in his complaint that any of the

4    supervisory personnel were directly involved in any violation raised in his complaint.  An action

5    will only be allowed to proceed against supervisory defendants who were specifically, personally

6    involved in the alleged constitutional violations.

7    Plaintiff also states in his complaint that several of his claims have not been fully

8    exhausted.  Prisoners seeking relief under § 1983 must exhaust all available administrative

9    remedies prior to bringing suit.  See 42 U.S.C. § 1997e(a).  This requirement is mandatory

10   regardless of the relief sought.  See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling

11   Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)).  Because exhaustion must precede the filing of

12   the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies

13   while the lawsuit is pending.  See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002).

14   Plaintiff does not specify which claims were not exhausted at the time he filed this action.

15   However, Plaintiff is informed that claims which were not properly exhausted prior to filing this

16   action will be subject to dismissal upon motion by the defendants.

17

18                          **III.  CONCLUSION**

19   Plaintiff's complaint is deficient in several ways.  It violates Rule 8's brevity

20   requirement, that a complaint contain a clear and concise statement of the claims.  He fails to

21   identify specific claims against specific defendants, setting forth the facts showing how the

22   individual defendants violated his rights.  He generally complains about the hardships of prison

23   life, for which he generally cannot state a constitutional violation.  However, he also raises

24   claims which could be cognizable, such as denial of medical treatment and violation of his

25   freedom of religion rights.  Plaintiff is advised that if he chooses to file an amended complaint,

26   he will be required to set forth his claim in a clear, concise way in order to allow the court and

the defendants to identify his claims.  He may chose do so by using headings to clearly identify which facts he alleges give rise to his medical claims and which facts give rise to his religious claims.

Because it is possible that some of the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend prior to dismissal of the entire action.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).  Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint.  See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived.  See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).  Therefore, if Plaintiff amends the complaint, the court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete.  See Local Rule 220.  An amended complaint must be complete in itself without reference to any prior pleading.  See id.

If Plaintiff chooses to amend the complaint, he must demonstrate how the conditions complained of have resulted in a deprivation of his constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation, and he must do so clearly and concisely.  See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because some of the defects identified in this order cannot be cured by amendment, Plaintiff is not entitled to leave to amend as to such claims.  Plaintiff, therefore, now has the following choices: (1) Plaintiff may file an amended complaint which does not allege the claims identified herein as incurable, in which case such claims will be deemed abandoned and the court will address the remaining claims; or (2) Plaintiff may file an amended complaint which continues to allege claims identified as incurable, in which case the court will issue findings and

recommendations that such claims be dismissed from this action, as well as such other orders and/or findings and recommendations as may be necessary to address the remaining claims.

Finally, Plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action.  See Ferdik, 963 F.2d at 1260-61; see also Local Rule 110.  Plaintiff is also warned that a complaint which fails to comply with Rule 8 may be dismissed with prejudice pursuant to Rule 41(b).  See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Accordingly, IT IS HEREBY ORDERED that:

1.      Plaintiff's complaint is dismissed with leave to amend; and

2.      Plaintiff shall file an amended complaint within 30 days of the date of service of this order.

DATED: April 21, 2010

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

14