IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DWAYNE EICHLER, | No. CIV S-09-1032-MCE-CMK-P |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| J. TILTON, et al., | |
| Defendants. | |

Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is plaintiff's amended complaint (Doc. 15).

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1), (2).  Moreover, the Federal Rules of Civil Procedure require that complaints contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This means that claims must be stated simply, concisely, and directly.  See McHenry v. Renne, 84 F.3d 1172,

1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because a plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the court to conduct the screening required by law when the allegations are vague and conclusory.

Plaintiff's original complaint was dismissed, with leave to amend, for failure to state his claims clearly and concisely, pursuant to Rule 8, as well as for failure to state a cognizable claim.  Plaintiff was informed, in detail, of Rule 8's requirements and the need to allege an actual connection or link between the actions of the named defendants and the alleged constitutional deprivations.  He was also informed as to what is required to state a claim for, *inter alia*, denial of medical treatment, and violation of his freedom of religion rights.

## I. PLAINTIFF'S ALLEGATIONS

In his amended complaint, plaintiff continues to make somewhat vague and general allegations about the lack of medical treatment he has received.  For instance, he claims he sought medical care for severe stomach pains and rectal spasms, for which did not receive any treatment for more than 18 months , until he was sent to Manteca Hospital.  However, plaintiff fails to identify who denied him such treatment.  (See Am. Comp., Doc. 15, at 16).  He also claims he was denied follow up medical treatment, as ordered by Dr. Tran.  He again fails to state who denied him the treatment.  (See id. at 185).  Plaintiff's complaint states he has had on going medical deprivation dating back to 1989, covering two separate terms of incarceration.  He also alleges he had a broken nose and blocked nasal passage which have not been fixed, but again fails to state who was responsible for such treatment.  (See id. at 21).  Those few instances he does identify individuals, his claims against those defendants are unclear.

1    Plaintiff also continues to allege he has been denied the ability to practice his
2 religious beliefs.  He states he is an anthroposophist, and has been denied the ability to practice
3 his religious beliefs.  (See id. at 22).  However, he fails to state how he was so denied, such as
4 how he was prevented from his religious practices.  His statements that he was denied "religious
5 supplies, sanctuaries, scheduling for religious duties and rights" is inadequate.  Plaintiff was also
6 previously fully informed as to what is required to state a claim for violation of his right to
7 practice his religious beliefs.  He has again failed to do so adequately.
8    Finally, plaintiff apparently claims other alleged violations by the defendants,
9 such as failure to provide for his safety, negligence, and overcrowding.  However, he again fails
10 to identify who violated his rights, and how.

## II.  DISCUSSION

Plaintiff was previously informed, in detail, how his complaint was inadequate and what was required to adequately state a claim.  As to his medical claims, plaintiff was informed:

> The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

///

1    Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim
2    under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as
3    dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is sufficiently
4    serious if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction
5    of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th
6    Cir. 1994).  Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of
7    comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic
8    and accompanied by substantial pain.  See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).
9           The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts
10   because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns.
11   See McGuckin, 974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to decisions concerning
12   medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989).  The complete denial of medical attention may
13   constitute deliberate indifference. See Toussaint, 801 F.2d at 1111.  Delay in providing medical treatment, or interference with medical
14   treatment, may also constitute deliberate indifference.  See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner
15   must also demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.
16           Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth
17   Amendment.  See Estelle, 429 U.S. at 106.  Moreover, a difference of opinion between the prisoner and medical providers concerning
18   the appropriate course of treatment does not give rise to an Eighth Amendment claim.  See Jackson v. McIntosh, 90 F.3d 330, 332
19   (9th Cir. 1996).
            To the extent Plaintiff is claiming denial of medical
20   treatment, Plaintiff's claims are mostly vague and conclusory.  While he claims he was denied medication and denied treatment as
21   well as follow up visits, he fails to state who denied him medication, what medication he was denied, and who denied him
22   treatment.

23   As to plaintiff's religious claims, he was informed:

24           The United States Supreme Court has held that prisoners retain their First Amendment rights, including the right to free
25   exercise of religion.  See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); see also Pell v. Procunier, 417 U.S. 817, 822
26   (1974).  Thus, for example, prisoners have a right to be provided

4

with food sufficient to sustain them in good health and which satisfies the dietary laws of their religion. See McElyea v. Babbit, 833 F.2d 196, 198 (9th Cir. 1987). In addition, prison officials are required to provide prisoners facilities where they can worship and access to clergy or spiritual leaders. See Glittlemacker v. Prasse, 428 F.2d 1, 4 (3rd Cir. 1970). Officials are not, however, required to supply clergy at state expense. See id. Inmates also must be given a "reasonable opportunity" to pursue their faith comparable to that afforded fellow prisoners who adhere to conventional religious precepts. See Cruz v. Beto, 405 U.S. 319, 322 (1972).

However, the court has also recognized that limitations on a prisoner's free exercise rights arise from both the fact of incarceration and valid penological objectives. See McElyea, 833 F.2d at 197. For instance, under the First Amendment, the penological interest in a simplified food service has been held sufficient to allow a prison to provide orthodox Jewish inmates with a pork-free diet instead of a completely kosher diet. See Ward v. Walsh, 1 F.3d 873, 877-79 (9th Cir. 1993). Similarly, prison officials have a legitimate penological interest in getting inmates to their work and educational assignments. See Mayweathers v. Newland, 258 F.3d 930, 38 (9th Cir. 2001) (analyzing Muslim inmates' First Amendment challenge to prison work rule).

In addition , Congress enacted the Religious Land Use and Institutionalized Persons Act ("RLUIPA") in 2000. See Guru Nanak Sikh Soc. of Yuba City v. County of Sutter, 456 F.3d 978, 985 (9th Cir. 2006) (citing City of Boerne v. P.F. Flores, 521 U.S. 507 (1997)) . Under RLUIPA, prison officials are prohibited from imposing "substantial burdens" on religious exercise unless there exists a compelling governmental interest and the burden is the least restrictive means of satisfying that interest. See id. at 986. RLUIPA has been upheld by the Supreme Court, which held that RLUIPA's "institutionalized-persons provision was compatible with the Court's Establishment Clause jurisprudence and concluded that RLUIPA 'alleviates exceptional government-created burdens on private religious exercise.'" Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005) (quoting Cutter v. Wilkinson, 544 U.S. 709, 720 (2005)).

It is not clear whether a prisoner must specifically raise RLUIPA in order to have his claim analyzed under the statute's heightened standard. Compare Alvarez v. Hill, 518 F.3d 1152, 1157 (9th Cir. 2008) ("factual allegations establishing a 'plausible' entitlement to relief under RLUIPA, . . . satisfied the minimal notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure."), with Henderson v. Terhune, 379 F.3d 709, 715 n.1 (9th Cir. 2004) (declining to express any opinion about whether plaintiff could prevail under RLUIPA because plaintiff brought his claim under the First Amendment only). Therefore, it is possible for a prisoner's complaint to raise both a First Amendment claim and a RLUIPA claim based on the same factual allegations. In other words, even if the plaintiff does not specifically invoke the heightened protections of RLUIPA, he may nonetheless be entitled

to them.  Under Henderson, however, the plaintiff's claim may be limited to the less stringent Turner "reasonableness test" if the plaintiff specifically brings the claim under the First Amendment only.

Under both the First Amendment and RLUIPA, the prisoner bears the initial burden of establishing that the defendants substantially burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith.  See Freeman v. Arpaio, 125 F.3d 732, 736 (9th Cir. 1997) (analyzing claim under First Amendment); see also Warsoldier, 418 F.3d at 994-95 (analyzing claim under RLUIPA).  While RLUIPA does not define what constitutes a "substantial burden," pre-RLUIPA cases are instructive.  See id. at 995 (discussing cases defining "substantial burden" in the First Amendment context).  To show a substantial burden on the practice of religion, the prisoner must demonstrate that prison officials' conduct    "burdens the adherent's practice of his or her religion by pressuring him or her to commit an act forbidden by the religion or by preventing him or her from engaging in conduct or having a religious experience which the faith mandates."  Graham v. Commissioner, 822 F.2d 844, 850-51 (9th Cir. 1987).  The burden must be more than a mere inconvenience.  See id. at 851.

Plaintiff's claims that his religious rights are being denied is unclear.  It appears that he is claiming his rights are being violated by prison officials not allowing him to practice yoga.  In order for Plaintiff to show his rights have been violated, at a minimum, he will be required to show that his religious beliefs are sincerely held and that they are religious in nature.  See Callahan v. Woods, 658 F.2d 679, 683 (9th Cir. 1981).  If Plaintiff is going to amend his complaint to attempt to state a claim regarding his freedom of religion rights, he will be required to clearly state what rights he believes have been violated and how the defendants are substantially burdening the practice of his religion.

Finally, plaintiff was informed of the need to adequately link his claims to the individual defendants:

Plaintiff's complaint is inadequate in that it fails to adequately link the proper defendants to his claims.  To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations.  See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not

6

> sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).
>
> Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 129 S. Ct. at 1948.
>
> Plaintiff has named several supervisory personnel as defendants in his complaint, including the Director and Secretary of the California Department of Corrections and Rehabilitation, as well as the Warden. There is no indication in his complaint that any of the supervisory personnel were directly involved in any violation raised in his complaint. An action will only be allowed to proceed against supervisory defendants who were specifically, personally involved in the alleged constitutional violations.

(Order, Doc. 12).

Plaintiff has failed to correct the inadequacies previously identified. His amended complaint still fails to adequately set forth a claim for violation of his constitutional rights either related to his medical care or his religious freedom, or any other constitutional right. While his amended complaint is more understandable, he fails to clearly set forth his claims identifying who violated his constitutional rights, and how. Throughout his amended complaint, he generally refers to groups of defendants, such as medical providers, mental health staff, wardens or CDC staff in general. He then claims these groups of defendants violated his rights by using

conclusory and vague allegations.  He does not clearly identify who violated his rights, and in what way each individual defendant has done so.  Even where he does state a specific defendant's name, his allegations are too vague and insufficient to support his claims.

### III.  CONCLUSION

Plaintiff was provided an opportunity to file an amended complaint which adequately set forth his claims.  He was informed as to what was required in order to adequately state a claim, and the requirement to set forth his claims related to each defendant.  He failed to do so in his amended complaint.  It appears that plaintiff is either unable or unwilling to cure the defects in his complaint.  As such, further leave to amend should not be granted prior to the dismissal of the entire action.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).

Based on the foregoing, the undersigned recommends that plaintiff's amended complaint be dismissed for failure to state a claim, and this action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  April 14, 2011

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE